In the Matter of FRIGORIFICO Y ALMACEN SAN MIGUEL d/b/a San Miguel Cash & Carry, Debtor.

**Bankruptcy No. 85-01176(SEK).**

United States Bankruptcy Court,
D. Puerto Rico.

July 13, 1989.

---

Irving K. Hernández, Rio Piedras, P.R., for debtor.

María Luisa Contreras, San Juan, P.R., for Creditor Cámara de Comerciantes Mayoristas.

José Colón Gil de Rubio, Santurce, P.R., Trustee.

## OPINION AND ORDER

SARA E. DE JESUS, Bankruptcy Judge.

Presently before the Court is Mr. José A. Colón Gil de Rubio's request for compensation during the period he acted as operating Trustee in this case, opposed by the Debtor and the Cámara de Comerciantes Mayoristas (Cámara). Several hearings were scheduled and testimony was received. Pursuant to the evidence submitted, the Court now enters the following.

## FINDINGS OF FACT

1. The Debtor, as its name implies, operates a retail grocery business, commonly referred to as "a cash and carry" in Rio Piedras, Puerto Rico. Its accounting was kept on a cash basis, as opposed to an accrual basis.

2. On August 30, 1985, Debtor filed a voluntary petition for reorganization under Chapter 11 of the U.S. Bankruptcy Code.

3. The Cámara de Comerciantes Mayoristas, assignee of most of the unsecured claims, requested a conversion to Chapter 7 because of Debtor's delay in filing accurate financial information, a Disclosure Statement and a Plan.

4. On June 25, 1987, the Court ordered the conversion of the case to Chapter 7, appointing Mr. José A. Colón Gil de Rubio as an operating Chapter 7 Trustee to pre-serve the ongoing value of the business. The Trustee was ordered to report within 30 days whether the business could be reorganized or should be liquidated.[1] At the Trustee's request, his appointment as operating trustee was extended until August 11, 1987.

5. The Trustee, Debtor and Cámara de Comerciantes asked the Court to reconvert the case to Chapter 11, on August 7, 1987.[2] A review of Debtor's finances by these entities showed it would be able to present a plan of reorganization within 20 days, offering 47.05% payment to unsecured creditors at the rate of $40,000.00 the first year, $50,000.00 the second year, $60,-000.00 the third and fourth years, and the balance payable on the fifth year. Debtor also agreed to hire an accounting firm acceptable to the Cámara, who would review the financial projections, the revised monthly reports of operations, help draft an amended disclosure statement and appropriate objections to claims. Payments under the proposed plan were to be guaranteed by mortgage notes pledged by the equity security holders.

6. The conversion to Chapter 11 was granted on September 11, 1987.

7. The Trustee filed a report of his operations indicating the sales from June 29, 1987 through September 10 of that year were $309,377.42 of which he received payments of $280,167.42, with an estimated inventory upon termination of his operations of $140,249.86 and gross profits of $48,310.38.

8. The Trustee then filed a revised application claiming the maximum compensation allowed by Section 326(a) of the Code, or $9,552.06 based upon disbursements of $312,402.00 which he made while acting as

---

**1.** The Trustee filed an Application to employ himself as general manager and senior financial management consultant, alleging these appointments were needed to operate the business and to report on the viability of its reorganization, "work that far exceeds the duties assigned by law to a trustee". The motion was denied and the reconsideration of the denial was voluntarily withdrawn.

**2.** On that date the Trustee was not able to attend a hearing because he was in Houston, Texas accompanying his father who was undergoing medical treatment. He nevertheless reported he had completed enough work to join in the motion recommending reconversion of the case to Chapter 11 which was then scheduled to be heard on September 11, 1987. His appointment as operating Trustee was extended until that date.

the operating trustee.[3] He attached a list of cash disbursements, subsequently submitting cancelled checks and invoices indicating cash payments.[4]

9. Both the Cámara and the Debtor questioned the reasonableness of the Trustee's compensation, but presented no evidence of their own to contradict the testimony of the Trustee or that of Dr. Carlos Lastra, the expert witness.

10. The Trustee stated he devoted 83 hours to this particular case. His time was spent obtaining financial information, reviewing invoices of payments, supervising the business operations, drafting of Trustee's reports, discussing this information and a reconversion with Cámara and the Debtor.[5]

11. Dr. Carlos Lastra, an economist, whose credentials include graduate studies at Harvard University and a lifelong involvement as a business consultant, occupying such posts as Secretary of Commerce for the Commonwealth of Puerto Rico, testified as to remuneration received in the community by senior management financial consultants and general managers of grocery stores. His testimony that senior management financial consultants were compensated at an hourly rate that could be as high as $200.00 per hour, is accepted by this Court. Likewise, his testimony that general managers of grocery stores could receive a yearly salary ranging from $40,000.00 to $60,000.00, is believable.

## ISSUE

Whether the Trustee's request for compensation in this case is reasonable and should be approved?

3. Mr. Colón Gil de Rubio calculated his compensation as follows:

| | |
|---|---|
| 15% of first $1,000 | $   150.00 |
| 6% of next $2,000 | 120.00 |
| 3% of next $309,402 | 9,282.06 |
| | $9,552.06 |

He requested expenses in the amount of $848.87 of which $775.00 were subsequently voluntarily withdrawn.

4. We have reviewed the cancelled checks and invoices of cash payments (some of these are

## CONCLUSIONS OF LAW

11 U.S.C. Sections 330(a)(1) and (2) provide that a trustee may be awarded: "(1) *reasonable compensation for actual, necessary services rendered* . . . based on the nature, the extent, and the value of such services, time spent on such services, and the costs of comparable services other than in a case under this Title; and (2) reimbursement for actual, necessary expenses." (our emphasis)

11 U.S.C. Section 326(a) limits this compensation to a maximum of 15% on the first $1,000.00 or less, 6% on any amount in excess of $1,000.00 but not in excess of $3,000.00, and 3% on any amount in excess of $3,000.00, ". . . upon all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims."

As explained in 1 *Norton Bankruptcy Law and Practice,* Sections 13.10–13.14:[6]

"In many cases, the trustee earns and is entitled to the maximum fee. However, the trustee is not automatically entitled to the maximum Code Section 326 fee. Code Section 330 allows the court to set 'reasonable compensation for actual, necessary services rendered by such trustee, . . .' in a case, but not to exceed the maximum allowable Code Section 326 fee.

As in all compensation matters, in the case of trustee compensation, the court has great discretion in awarding a fee and, on appeal, such findings are only disturbed if they are clearly erroneous or constitute an abuse of discretion. Code Section 330 requires the court, when exercising its discretion in setting trustee's

barely legible) and obtained a different total for disbursements than reported by the Trustee. Trustee claims disbursements of $312,402.00; our review shows disbursements of $322,527.68, a difference of $10,125.68.

5. During this period of time the Trustee was also an operating trustee for Hospital Supply another case assigned to Chief Judge Lamoutte.

6. See also 2 *Colliers on Bankruptcy,* Section 326.01 (15th Ed.)

fee or awarding any compensation under the Code, to consider and apply the following criteria:

(1) time expended;

(2) nature and extent of services rendered;

(3) value of such services to the estate; and

(4) the cost of comparable services other than in a case under this title....

Because the number of hours expended has become a significant factor in awarding compensation, most courts require the trustee to keep accurate and detailed time records as to the types of services and have warned trustees of the negative results of failure to keep accurate and detailed time records. ... [N]o padding or exaggeration of records is permissible and, if the court determines that the records are inflated or disproportionately or inaccurately reflect the time expended it can disallow the excessive time and may deny all compensation.

Of course, the type of services rendered by trustees vary widely from ministerial functions, such as completing reports and noticing for administrative purposes, to complex functions, such as operating multi-million dollar businesses. The greater the level of difficulty and the trustee's successful performance of difficult task, the greater the compensation that courts have awarded. So, where few assets and little work and skill is involved in a rather routine case, courts have awarded trustees less .... Where the trustee has great experience or is exceptionally skilled in an area, the nature of services rendered is generally of a higher quality than the quality generated by a novice. ... This factor would seem particularly applicable where an expert or specialist has been appointed as a trustee to continue a debtor's business. ... Finally, the extent of services is ... measured ... by the impact of the case on the trustee's business. If the case is so substantial as to require all or the greater part of the trustee's time and, ... if the trustee is force to forego other

business opportunities or has existing, normal workload and business disrupted, the court should consider higher compensation for the trustee than will be awarded in cases where there is less stress or impact on the trustee's business or routine handling of a number of bankruptcy cases.

Perhaps the most significant factor to be considered in awarding compensation to a trustee ... is ... the benefit such services have bestowed on the estate. ... [W]here a trustee has contributed substantially to the success of a debtor's reorganization plan, courts have been more generous with compensation awards.

Although trustees are not expressly mentioned, the concept of comparable fee awards in nonbankruptcy cases for comparable services most likely applies to a trustee, particularly in the case of an operating trustee. ... Thus, the Code contemplates and requires fee awards in bankruptcy cases to more closely approximate fees by trustees and professionals rendering services of a similar nature, character and type in nonbankruptcy cases."

The only records of the Trustee's time spent on this case are attached as Exhibit A. These contain a breakdown of services performed by the Trustee. His activities as operating Trustee were more in the nature of those carried out by a supermarket manager of a business with a volume of sales of about one quarter of a million dollars per month.[7] We conclude this because the Trustee did not present any evidence of the management and financial controls he implemented, nor of his analysis of the financial feasibility of this corporation, other than to offer:

1. his monthly reports of operations, which are compilations of financial data generated by the business and presented in a particular format required by the Court;

2. his recommendation for the reconversion of the case to Chapter 11 reorganization, devoid of his analysis, but reached

---

7. See finding of fact #7.

after meeting with the Debtor and counsel for the Cámara;

3. his control over Debtor's bank accounts, cash receipts, accounts receivables, purchase of inventory, payroll and other expenses, for forty five days;

4. his supervision of the daily operations of the grocery store which continued to be run by its principal stockholder employed by the Trustee;

5. all cancelled checks he issued together with cash vouchers and a final report of his operations.

These factors show that the Trustee rendered ministerial services in an uncomplicated case which certainly did not involve millions of dollars.

The Trustee did not possess any particular specialized knowledge on how to run a supermarket, although he did present reliable financial data previously unavailable, which enabled the main creditor and the Court to decide the business had a good opportunity for rehabilitation.[8] Thus, his work was specially beneficial to the unsecured creditors, who if faced with a liquidation would get next to nothing, if not zero.

While the Trustee testified he only operated one other business during his tenure, he did not mention how many no asset cases and straight liquidation cases he was handling at the same time. He did not state that running this business caused him to taper off on his other activities.[9] In fact, his 83 hours of work on this case represent 35% of the average hours of work exerted by a common man during the same period.[10]

If we apply Dr. Lastra's testimony to the facts of this case, it will show the following:

1. assume the Trustee is entitled to the compensation received by an experienced grocery store manager in P.R. at $60,000.00 per year;

2. assume that the manager works twenty days per month with an eight hour day, equal to 160 working hours per month;

3. assume that the manager works twenty days per month;

4. $5,000.00 divided by 160 working hours equals $31.25 per hour, presumably earned by an experienced grocery store manager. Thus, the comparable compensation in the community for the services performed by the Trustee in this case is considerable less than the $115.06 per hour which he now claims.

Lastly, we agree with Judge Lavien who in the case of *In Re Garland,* 8 B.R. 826, 832–33 (Bkrtcy.Mass., 1981), stated:

"Even the numbers that are used by the Trustee in dealing with the maximum Trustee's compensation under Sec. 326 (11 U.S.C., Sec. 326) of the Code are open to question. ... The maximum really has no correlation with the fair value for services. If, for example, the Trustee represented a supermarket or a discount store, there would be a large turnover of cash sales but that would in no way have any correlation with the value of the Trustee's services. Within the limits set by Section 326 by applying Section 330 which expressly includes the Trustee, the Court, in keeping with the early elucidated principles, must determine reasonable compensation."

WHEREFORE, while the Trustee is entitled to be reasonably and generously compensated for the benefits his intervention achieved, considering the hours he spent in the case, the work he performed and comparable remuneration of nonbankruptcy

---

8. See Joint Motion for Reinstatement of Case to Chapter 11, Trustee's Report and Disclosure of Assets, Trustee's Report on Result of Operations, and Trustee's Application for Compensation Revised, Docket entries #s 71, 73, 80, and 89.

9. He was not required nor did he in fact work exclusively on this case, to the Court's knowledge.

10. We arrived at the 35% figure as follows: 30 days times an 8 hr. working day = 240 hrs.; and 83 working hrs. of the Trustee divided by 240 hrs. = .35.

services, we award a fee of $5,000.00,[11] plus expenses in the amount of $227.32, which will be paid by the Debtor in accordance with the confirmed plan and the law.

## EXHIBIT A

## TRUSTEE'S INFORMATIVE MOTION ON TRUSTEE'S APPLICATION FOR COMPENSATION

### TO THE HONORABLE COURT:

NOW COMES Jose A. Colon Gil de Rubio, your duly appointed trustee on the above captioned case while on Chapter 7, through the undersigned counsel and very respectfully states and prays as follows:

1. That this case was converted from Chapter 11 to Chapter 7 on June 25, 1987. Movant herein was appointed Chapter 7 trustee in this case.

2. That this trustee was operating trustee for the debtor estate from June 29 to September 10, 1987.

3. That currently, according to this trustee's recommendations, creditors' acceptance and the Honorable Court's approval the case was converted to Chapter 11 and Debtor is in possession since September 11, 1987.

4. Upon due notice, a hearing on trustee's compensation was held on December 4, 1987. Present were Debtor, stockholders, creditors and trustee, all represented by counsel.

5. During the referenced December 4th hearing, the Honorable Court asked whether there was any opposition to this trustee's request for compensation. No objections were presented at the hearing.

6. At a later date, an objection on the amount claimed by this trustee for compensation was filed by Mr. Miguel Cruz, a stockholder, who was present at the December 4th hearing.

7. It must be noted that no question has been raised on your trustee's work. The issue presented by movant was pertaining

---

11. We arrived at this sum by multiplying 83 hours times $31.25 per hour and added to the results to account for the Trustee's expertise in

to the criteria for determining reasonable compensation for the trustee. No objection has been made as to the efficiency or effectiveness of the trustee's performance. Nor is the applicability of 11 U.S.C. Sec. 326 being questioned. Rather, Mr. Cruz is questioning the amount of compensation resulting from the application of the maximum rate allowed in Section 326.

8. Subsequently, on February 12, 1987 the Honorable Court entered an order to the trustee to (1) appear at a hearing scheduled for March 4, 1988 to consider the opposition of Mr. Cruz to his compensation, (2) Inform the court of the effort devoted to this case, (3) inform the Court how many cases he was handling as an operating trustee from the period of June 29 thru September 10, 1987 and what percentage of his time was dedicated to the debtor estate herein, (4) indicate why he thinks the fees he is requesting are reasonable.

### DETAILS ON EFFORT DEVOTED

As requested by the Honorable Court time devoted to the case is one of the elements prescribed and described by law as one of the elements to be considered in determining the reasonableness of the compensation:

|  | Time Devoted Hours or fraction |
|---|---|
| 26 JUNE 1987 (9:30 PM) Friday Drove from my office to site and locked the place up with lock and chain inspected area for security. | 1 |
| 27 JUNE 1987 Saturday Drove from my house to site noted that chain has been broken and business was in operation. Went to my office, Attempted to contact lawyer, and started work on my report to the court on the incident. Mr. Miguel Cruz contacted me in the afternoon gave me an explanation of what had happened and an appointment was made from for next day. | 5 |
| 28 JUNE 1987 Sunday Met with Mr. Cruz and went to site. At the meeting basic instructions to debtor were provided and data was gathered to document a request to operate the business. Went to office and completed the document" | 6 |

29 June 1987

bankruptcy matters, his appearances in Court and the beneficial results for the estate brought about by his actions.

24

| | Time Devoted Hours or fraction |
|---|---|
| File the document mentioned above at my request the Honorable Court, authorized to operate the business ant to contract Mr. Cruz for $1.00 per month. Continued work on site and/or at my office | 8 |

**1 July 1987**
Went to site and obtained such as financial statements and computer runs to determine controls and financial feasibility. Continued the analysis of this data Review of invoices payments and supervision of operations. — 5

**2 July 1988**
Visited the Bank with Mr. Cruz to assure standing on financial community in the event that outside financing could be required. Continued data gathering and analysis process. Findings were discussed with debtor Review of invoices payments and supervision of operations. — 6

**3, 5, 6 July 1988**
Continue receiving calls from creditors. Informed of the development of the case. Prepared motion to employ attorney. Filed the (24 July 1987) Motion review of invoice, or payments and supervision. — 3

**7 July 1987**
Continued data analysis prepared and filed Application of Trustee to employ Himself as General Manager and Senior Financial consultant. — 4

**22 July 1987** Prepared motion for reconsideration on denial on request for Appointment as General Manager and senior Financial Consultant. Attended hearing and withdrew motion. — 3

**24 July 1987**
Conference with attorney Ayala on case strategy and development. Prepared and filed interim operating report. — 6

**26 July 1987**
Continued with analysis of financial data to determine feasibility of business as a going concern. Review of invoices or payments and supervision of operations. — 4

**27 July 1987**
Continued with analysis of financial data to determine feasibility of the business as a going concern. Review of invoices or payments and supervision of operations. — 4

**31 July 1987**
Preparation of Trustee's report and request for a deviation of a local rule Review of invoices or payments and supervision of operations. — 3

**7 August 1987**
Conference with attorney on joint motion for conversion review of invoice

| | Time Devoted Hours or fraction |
|---|---|
| payments or supervision of operations | 2 |

**9 August 1987**
Prepared motion for clarification on trustee request for appointment of attorney — 5

**10 August 1987**
Conference with Emilio Medina Esq. on the preparation of a note payable to recover the amount of $17,774.21 owed to the estate. — 2

**10 August 1987 7:pm**
Conference with Mr. Valentin Cruz and attorney Emilio Medina on signature of note payable. — 3

**15 August 1987**
Telephone conference with Attorney Nilda Ayala On the supervision of San Miguel Cash and Carry operations — .25

**19 August 1987**
Telephone Conference with Attorney Nilda Ayala Esq. on the Supervision of San Miguel Cash and Carry operations — .25

**25 August 1987**
Telephone Conference with Attorney Nilda Ayala on the Supervision of San Miguel Cash and Carry operations. — .25

**30 August 1987**
Telephone Conference with Attorney Nilda Ayala on the Supervision of San Miguel Cash and Carry operations — .25

**5 September 1987**
Telephone Conference with Don Miguel Cruz and visit to site. Supervision review of invoices payments an supervision of operations — 3

**7 September 1987**
Analysis of data and Compilation of all transactions preparation of Operating Report — 6

**11 September 1987**
Supervision review of invoices payments an supervision of operations — 3

Total hours devoted — 83

## TRUSTEE OTHER ASSIGNMENT AS OPERATING TRUSTEE.

Concurrent with this mission the trustee was operating the Hospital Supply case Number 84–01195 Esl. It should be noted that in this case total monthly sales averaged $3500. That is approximately 2.5% of total sale for this case. Effort on each case in operations necessarily has direct impact on the effort.

REASONABILITY OF THE COMPENSATION

Your Trustee firmly believes that the compensation requested is reasonable. A simple division of $9,552.06/83 results in a Hourly Rate of $115.06. This is about the lower range of the billing rate on consulting management work. In addition your trustee will not recover its overhead costs. Such as clerical. light power and the use of his equipment.

Risk is another element that needs to be considered to determine whether the compensation is reasonable:

Since the inception, the trustee is held responsible for the protection of all assets of the estate. In addition to real property, merchandise and furniture and other assets. While in operation (June 29 to September 10 1987) the trustee was also responsible for sales, purchases payroll. The value of the estate administered by the trustee including all assets, is in excess of $1,000,000 not including income and expenses while in operations. That is, the trustee guarantees through his bond and ultimately personal liability that he will properly administer this estate.

In this particular case the risk that I had to assume to operate the business in benefit to creditors stockholder and debtors is considerably higher than the risk involved in the sale of inventory or real property or other assets. In addition administrative costs such as legal fees were maintained to a minimum, All reporting requirements were thoroughly met, also the trustee brought into the estate over $17,000 through the formalization of account receivables.

As stated before I firmly believe that I have met all of the requirements prescribed and described by law that warrants the compensation applied for.

Accordingly your trustee respectfully pray that the stockholder objection be denied and that debtor be ordered to pay the trustee the amount claimed without further delay.

Respectfully submitted:

In Hato Rey Puerto Rico This 4 of March 1987.

(s) José A Colon Gil de Rubio
Trustee