**In re VOLADOR EQUITY/INCOME FUND '86–'87, a limited partnership, Debtor.**

**Bankruptcy No. BK–89–5060–BH.**

United States Bankruptcy Court, W.D. Oklahoma.

June 17, 1991.

James P. Woodruff, Oklahoma City, Okl., for the Creditor Group.

Kenneth L. Spears, Oklahoma City, Okl., for the trustee.

Stephen J. Moriarty, Oklahoma City, Okl., for the debtor.

Charles E. Snyder, Oklahoma City, Okl., for the U.S. Trustee's Office.

## ORDER DENYING THE TRUSTEE'S REQUEST FOR COMPENSATION

RICHARD L. BOHANON, Chief Judge.

The issue presented is whether the trustee, Kenneth L. Spears, is entitled to a fee in connection with this case and, if so, the amount that ought to be allowed. The holder of a secured claim, Western Farm Bureau Life Insurance Company, and numerous holders of unsecured claims object to any allowance to him for compensation.

The facts are undisputed and show that the debtor possessed apartment complexes in Oklahoma City and Phoenix when an involuntary petition was filed against it. Soon afterwards the trustee was appointed,[1] and he operated the apartments but never proposed a plan of reorganization nor filed a disclosure statement. The Phoenix property was abandoned and assumedly foreclosed by the holder of the secured claim. At this time the only asset of the estate is some $10,000 which results from unclaimed security deposits left behind by former tenants of the apartments.

---

**1.** There was a dispute over naming the trustee. The creditors sought appointment of a particular apartment management specialist, but the United States Trustee refused and named the current trustee. The creditors then sought to disqualify him under § 1104(c), but it was held that the appointment was valid.

The trustee employed a manager for the Oklahoma City apartments who has been paid his monthly management fee and a $5,200 commission resulting from the sale of the complex.[2]

After nine months the trustee noticed the Oklahoma City apartments for sale pursuant to § 363 of the Code. He did not obtain an appraisal of the apartment complex but knew that Western was owed in excess of $700,000 on its note secured by the first mortgage.

Eventually the trustee obtained an offer for $650,000 through the efforts of his property manager-broker and entered into a contract for this amount. The buyer failed to close on the date agreed and the trustee sued.[3] After the trial commenced the buyer paid the purchase price which resulted in net receipts to the trustee of approximately $576,000 after closing costs, payment of property taxes, the commission and other adjustments. This sum has been ordered paid to Western to apply on its $700,000 note.

The trustee now claims a fee of some $19,980 based upon disbursements of approximately $660,000. The sum requested is the maximum allowable under 11 U.S.C. § 326. Virtually the entire fee request is calculated upon the proceeds received from the sale of the apartments in which the estate had no interest.

Though the title to the trustee's request states that it also seeks reimbursement of expenses, no request for reimbursement is made nor is any information concerning expenses provided.

■ The objectors first contend that no fee is allowable since the property sold was fully secured. It is abundantly clear from the language of § 326, however, that trustees may be compensated for disbursements made to holders of secured claims. "This provision was added for the purpose of insuring to trustees compensation commensurate with the trustees' services. Secured claims and those entitled to priority constitute a large proportion of the average estate; their administration frequently presents complex issues.... The crucial test seems to be, however, whether or not the particular property or fund has been *justifiably* administered by the court, or whether or not the trustee has *properly* performed services in relation thereto." 2 *Collier on Bankruptcy* ¶ 326.01[4][b] at pp. 326–23, 326–24 (L. King 15th ed. 1991) (emphasis supplied).

■ It is necessary to remember that § 326 provides the *maximum* fees the court may allow to a trustee and in all cases the allowance must be found to be reasonable. "[T]he trustee is never entitled to maximum compensation as a matter of right and the amount of compensation, within the maximum rate, is subject to the discretion of the court in light of the reasonable value of the services." 2 *Collier, supra,* ¶ 326.01[1] at p. 326–6.

It is thus necessary to examine what the trustee did, and did not do, in administering the estate and determine from that what, if any, fee is reasonable which may not exceed the $19,980 maximum he has requested.

While the trustee offered no evidence in support of his request, some facts become obvious from a review of the file and statements made at the hearing.

Section 1106 provides the starting point and details the duties of a trustee in a case under chapter 11. It first states that he or she must perform some specified duties listed in § 704. Generally, these include accounting for all property received; making an examination of proofs of claims; furnishing information requested by creditors; filing the reports required by the United States Trustee; and making the final report. The trustee apparently complied with some of these requirements but did not file the reports required by the United States Trustee in an operating case. He merely filed the reports prepared

**2.** Following a hearing on the objection of the holder of the secured claim the requested commission was reduced to the amount finally allowed.

**3.** Western has agreed to pay the trustee's attorneys' fees and expenses in keeping with this proceeding.

monthly by the Oklahoma City property manager which, according to the objecting creditors, "contain a variety of indecipherable computerized spread sheets". There were no reports made for the Arizona property.

The requirements of § 1106 then require that the trustee make the investigation of the assets and business of the debtor. While there was no evidence of the trustee's efforts, his time records were submitted in a supplement to the fee request. They do not indicate any efforts aimed at a reorganization or any negotiations or discussions with this goal in mind. Nor do they indicate any investigation concerning whether the debtor may have made any avoidable transfers in the period preceding the filing. An investigation of the desirability of continuing the business is a prime consideration of § 1106(a)(3), and it appears that a minimal attempt in this regard would have disclosed that since the estate had no assets, continuation of the business of operating the two apartments was futile.

Section 1106(a)(5) then requires that the trustee, as soon as practicable, file a plan or report of why a plan will not be filed together with a recommendation concerning the case. Neither the plan nor the report nor the recommendation were filed in this case.

Much of the trustee's time was spent seeking to enforce the contract with the buyer arranged by the broker. Initially it is difficult to comprehend why the trustee pursued this effort at all once he knew that the highest bid was at least $50,000 less than the amount of the secured note. As indicated previously, no appraisal was obtained concerning the value of the apartments but once the contract was made the trustee plainly knew that the transaction would contain nothing for the estate. The obvious question is why the trustee did not abandon the property when he saw that it would not realize enough to pay Western's note? This question is not answered.

The trustee had a property manager-broker whose fees have been allowed, albeit in a reduced amount, and he is the one who managed the apartments, located the buy-er, and arranged the sale. Additionally the trustee had a lawyer, whose fees and expenses also have been allowed. It was the attorney for the trustee who conducted the lawsuit against the buyer until he was substituted by Western's attorney. These lawyers all have been compensated by Western, and it is their efforts that resulted in the contract of sale finally closing. It is difficult to see that the trustee made any essential contribution towards this effort. He does say that he obtained more for the property than Western would have been able to receive had it foreclosed, but his statement belies the efforts of the broker who located the ultimate buyer. The only party having an interest in the Oklahoma City apartments, Western, disagrees with this statement. In any event, the sale resulted in no benefit to the estate.

On the day following the petition Western moved for an order prohibiting the use of cash collateral which was subsequently agreed to by the trustee, and in October 1989 he was ordered to make monthly adequate protection payments. None of these payments have been made and no explanation of their non-payment has been offered. If nothing else his inability to provide adequate protection to this undersecured creditor was yet another flag alerting the trustee that this was not an estate which was reorganizable under chapter 11.

The foregoing facts indicate two things. First, the estate of this involuntary debtor was not one that could be effectively reorganized, and this fact ought to have been apparent early in the case. Second, the estate had no assets other than the $10,000 and this fact also should have been readily apparent, especially if the apartments had been appraised. In addition the trustee did not perform the ordinary duties such as making an investigation for avoidable transfers and filing the reports with the United States Trustee. The avoidance investigation is essential in all cases and especially so in an involuntary case where the debtor's management has totally abandoned it after apparently failing to properly manage its assets and pay its debts. The apartments had rental income and the

debtor was not paying its debts. This money obviously went somewhere but the trustee's time records indicate no effort to trace either it or the debtor's insiders, and there is no report which would indicate any attempt was made to search out assets.

With these facts and background the task at hand is to determine what, if any, fee is allowable. The objecting holders of unsecured claims argue that the trustee "is entitled to no compensation as his services have not enhanced the estate or its administration."

Section 330 provides that a court looks to the nature, extent and value of the services in determining what is reasonable compensation for a trustee. Furthermore, the entity seeking the payment has the burden of showing that it is entitled to the requested fees and expense. *See In re TS Industries, Inc.*, 125 B.R. 638 (Bankr.D.Utah 1991); *In re James Contracting Group, Inc.*, 120 B.R. 868 (Bankr.N.D.Ohio 1990); *In re Stoecker*, 114 B.R. 965 (Bankr. N.D.Ill.1990).

■ A trustee is not automatically entitled to a fee equal to the maximum established by § 326(a). *Matter of Rauch*, 110 B.R. 467, 472 (Bankr.E.D.Cal.1990). Further, the trustee's fee "should be set according to the Section 330 [reasonableness] criteria, not merely according to the amount of moneys disbursed." *In re Financial Corp. of America*, 114 B.R. 221, 224 (9th Cir.BAP 1990).

By virtue of the holdings of several cases, the facts of this case would support a decision *ipso facto* that the trustee is entitled to no commission because he sold fully encumbered property of an undersecured creditor. *See, e.g., In re Palm Beach Resort Properties, Inc.*, 73 B.R. 323 (Bankr.S.D.Fla.1987). The explicit language of § 326 concerning "moneys disbursed" does not lead to this holding.

In seeking to determine what is reasonable compensation under § 326, it is difficult to ignore that the trustee offered no evidence and did not make any meaningful effort towards reorganization. He failed to conduct the statutory investigations which would have immediately disclosed that the estate essentially had no assets; and that continuation of the business of operating the apartments was futile.

Secondly, he omitted to have the Oklahoma City apartments appraised, which assumedly would have disclosed that the only asset of the estate was the $10,000 in rent security deposits. It took no effort on the part of the trustee to realize this asset, which was in one of the debtor's bank accounts.

Third, if nothing else, the trustee's inability to comply with the adequate protection order was still another flag which ought to have alerted him that this was not a case subject to effective reorganization under chapter 11.

Fourth, the trustee did not perform the ordinary duties such as undertaking an avoidable transfer investigation and filing the necessary reports. There is no report which would indicate any efforts to search out assets. The avoidance investigation is essential in all cases especially one with facts like this.

Finally, even the trustee's time spent in the endeavor to sell the property is elusive. He had a property manager-broker whose fees have been allowed, albeit in a reduced amount, and he is the one who managed the apartments, located the buyer and arranged the sale. Additionally, the trustee had a lawyer whose fees have been paid by the secured creditor. It was the lawyer who conducted the lawsuit against the buyer until he was substituted by Western's attorney. All of these lawyers have been compensated by Western, and it is their efforts which eventually resulted in the sale.

With these facts in mind, the court must then decide whether the trustee is entitled to any compensation according to the limitations of § 330. All of these factors militate against the allowance of any compensation.

According to the holding in *Financial Corp.*, "these criteria for setting trustee fees have closely resembled the factors used in awarding attorney fees". *Id.* at 223; *accord In re McNar, Inc.*, 120 B.R. 149 (Bankr.S.D.Cal.1990). "Classically, those factors include the time and labor involved; and the novelty and difficulty of

the questions presented by the case; and the experience, reputations, and ability of the professional." *Id.* at 223; *see Johnson v. Georgia Highway Express,* 488 F.2d 714 (5th Cir.1974).

In this case the trustee merely performed ministerial functions by unfortunately attempting to operate a business when all signs pointed to abandonment of the collateral and a quick conversion to chapter 7. There is absolutely no genuine reason for operation of the business to have continued. The trustee's "services were not extraordinary nor were special skills required." *McNar,* 120 B.R. at 154.

No novel or difficult issues of law or fact were presented in the case and, considering the fact the important duties were farmed out or not performed, the case was definitely not labor intensive. Since the estate is created for the benefit of the unsecured creditors, the trustee cannot be allowed a fee at their expense when the property should have been abandoned. *See Palm Beach Resort,* 73 B.R. at 324; and *In re B & L Enterprises, Inc.,* 26 B.R. 220, 223 (Bankr.W.D.Ky.1982).

For the foregoing reasons the trustee's request for allowance of compensation is denied.